1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ESTHER COHN,

11          Plaintiff,                    No. 2:10-cv-00865 MCE KJN PS

12        v.

13   BANK OF AMERICA,

14          Defendant.                    <u>ORDER</u>

15   _____/

16          Presently before the court is defendant's motion to dismiss plaintiff's complaint

17   pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Dkt. No. 15.)  The court heard this

18   matter on its law and motion calendar on January 6, 2011.  Attorney John D. Pingel appeared on

19   defendant's behalf.  Plaintiff, who is proceeding without counsel, failed to appear.[2]

20          The undersigned has considered the parties' briefs, oral arguments, and the record

21   in this case and, for the reasons stated below, grants defendant's motion to dismiss without

22   _____

23       [1] This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

24

25       [2] The court delayed the commencement of the hearing in order to provide plaintiff with
     additional time to appear.  The courtroom deputy also attempted to contact plaintiff at the
     telephone number located on some of the documents filed by plaintiff with the court.  The
26   courtroom deputy was unable to reach plaintiff, who never appeared in court.

                                       1

1   prejudice and, out of an out of an abundance of caution, provides plaintiff leave to file a first

2   amended complaint.  Additionally, as discussed below, the undersigned concludes that plaintiff's

3   entire case is subject to dismissal with prejudice based on plaintiff's ongoing failures to

4   prosecute her case and comply with the Federal Rules of Civil Procedure, the court's orders, and

5   the court's Local Rules.  In any event, the undersigned dismisses plaintiff's case without

6   prejudice on the merits of her case, but will recommend the dismissal of her case with prejudice

7   pursuant to Federal Rule of Civil Procedure 41(b) if plaintiff fails to file a timely first amended

8   complaint or otherwise fails to prosecute her case or fails in the future to comply with the Federal

9   Rules of Civil Procedure or the court's orders or Local Rules.

10  I.      BACKGROUND

11          On April 13, 2010, plaintiff filed her complaint.  (Compl., Dkt. No. 1.)  Plaintiff's

12  complaint consists of two pages and relates to the foreclosure and sale of her home located at

13  2140 Tarbolton Circle, Folsom, California 95630.[3]  (See Compl. ¶ 8.)  Although plaintiff's

14  complaint is written as if the foreclosure had not yet occurred at the time of filing, judicially

15  noticeable documents submitted by defendant reflect that plaintiff's home has already been

16  foreclosed on and was sold at a trustee's sale on May 19, 2009.  (Def.'s Req. for Judicial Notice

17  ("RFJN"), Ex. F.)

18          In what appear to be her first two claims and her basis for subject matter

19  jurisdiction, plaintiff alleges that Bank of America "violated the Protecting Tenants at

20  Foreclosure Act of 2009[,] 12 U.S.C. 5201"[4] and "violated the Foreclosure Prevention Act of

21

22          [3] Plaintiff apparently owned the subject property as a tenant in common with her now-deceased husband.  Plaintiff alleges that the stress of trying to pay the high monthly payments led

23  to her husband's death.  (Compl. ¶ 7.)

24          [4] Protecting Tenants At Foreclosure Act of 2009, Pub. L. No. 111-22, § 702, 123 Stat.

25  1660 (2009).  Section 5201 of Title 12 of the United States Code is simply the codification of the "Purposes" that relate to, among other enactments, the provisions of the Protecting Tenants at

26  Foreclosure Act of 2009 and the Emergency Economic Stabilization Act of 2008, Pub. L. No.
    110-343 (2008).

2008[,] 12 U.S.C. 1701."[5]  (Compl. ¶¶ 1-2.)  It is unclear from these initial allegations which

facts alleged in the complaint support or relate to these two claims or how defendant is alleged to

have violated the specific public laws cited by plaintiff.

Plaintiff also alleges that "Countrywide used predatory lending tactics to get a

loan for [plaintiff's] husband and [plaintiff] when [they] could not afford it."  (Compl. ¶ 3.)

Plaintiff does not allege any facts that explain the predatory lending tactics allegedly employed

by Countrywide.

Plaintiff does allege some facts relating to the loans issued to her and her late

husband.  She alleges that she and her husband possessed a first mortgage, either numbered or

under an account number of 072843206, and that "Countrywide changed the contract" from a

"fixed five year rate to a variable rate interest loan" before the five years were over.  (Compl.

¶ 5.)  Plaintiff alleges that this change, which resulted in a new loan under account number

167072147, forced her and her husband into a higher mortgage payment that they could not

afford.  (Id. ¶¶ 5-6.)

Plaintiff further alleges that because Countrywide was the "original creditor,"

plaintiff owes no money to Bank of America, and Bank of America may not foreclose on the

subject property.  (Compl. ¶ 8.)  Without any explanation, plaintiff cites 15 U.S.C. § 1692a(4),

which is the definition of the term "creditor" under the Fair Debt Collection Practices Act, 15

U.S.C. §§ 1692 et seq.[6]  (Compl. ¶ 8.)

Plaintiff also alleges that "Countrywide did not offer a loan modification

alternative to foreclosure" and that "Countrywide did not have a make home affordable plan" as

---

[5]  In its entirety, 12 U.S.C. § 1701 provides: "This chapter may be cited as the 'National Housing Act.'"

[6]  Section 1692a(4) provides: "The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

required by the "Obama administration." (Compl. ¶¶ 9-10.)  These allegations appear to relate to the Home Affordable Modification Plan ("HAMP").  One district court has described the HAMP program as follows:

> HAMP is a government program, established pursuant to the Emergency Economic Stabilization Act of 2008, designed to promote loan modification and other foreclosure prevention services.  Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives.  The servicer's obligations under HAMP are set forth in the HAMP Agreement, as well as in Program Guidelines established by the Department of the Treasury.

Villa v. Wells Fargo, No. 10CV81 DMS (WVG), 2010 WL 935680, at *1 (S.D. Cal. Mar. 15, 2010) (unpublished).

Apparently in regards to the HAMP program, plaintiff alleges that Bank of America did not let [plaintiff and her husband] have a reasonable loan modification program to help prevent foreclosure." (Compl. ¶ 11.)  Plaintiff alleges that Bank of America wanted her and her husband to pay a higher monthly payment than their original monthly payment, as well as the remaining balance of $353,495.65, which plaintiff alleges she does not possess.  (Id. ¶ 11.)  Finally, plaintiff alleges: "Bank of America and Countrywide is [sic] . . . taking advantage of me, a mentally disabled person who is collecting food stamps and has Medi-Cal to help pay for my medical expenses."[7] (Id. ¶ 13.)

In terms of relief, plaintiff seeks: (1) "[a] monetary settlement of $700,000 with no money owing to anybody"; (2) the deed to the property at issue "with no owning [sic] balance"; and (3) an order requiring defendant to pay "any court, legal and other fees associated with this case.  (Compl. at 2:23-25.)

On August 31, 2010, defendant BAC Home Loan Servicing, LP, formerly known as Countrywide Home Loan Servicing LP, which contends it was erroneously sued as Bank of

---

[7]  The undersigned intended to question plaintiff about her alleged mental illness at the hearing.  However, plaintiff made such an inquiry impossible by failing to appear.

4

1    America, filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil

2    Procedure 12(b)(6).  Plaintiff repeatedly failed to file an opposition to defendant's motion to

3    dismiss and, eventually, the undersigned entered findings and recommendations dismissing

4    plaintiff's case for failure to prosecute, failure to comply with the court's orders, and failure to

5    comply with the court's Local Rules.  (Dkt. No. 23.)  Plaintiff objected to those findings and

6    recommendations, and her objections indicated some minimal effort to prosecute her case, albeit

7    without any regard for the rules of procedure and the Local Rules.  Although skeptical of

8    plaintiff's efforts, the undersigned vacated the findings and recommendations out of an

9    abundance of caution and ordered plaintiff to file an opposition to defendant's motion on or

10   before December 16, 2010.  (Dkt. No. 27.)  Plaintiff filed a three-page opposition on December

11   16, 2010, and defendant filed a reply brief.  (Dkt. Nos. 28, 29.)

12   II.     DISMISSAL PURSUANT TO RULE 41(b)

13            As noted above, defendant filed the pending motion to dismiss on August 31,

14   2010.  In the ensuing months, plaintiff demonstrated an inability to respond to the motion despite

15   clear warnings about the consequences of such a failure, including dismissal of her case.  (See

16   Order, Oct. 5, 2010, Dkt. No. 19.)  In short, plaintiff demonstrated to the court that she had

17   chosen not to actively prosecute her lawsuit or comply with the court's orders, the Federal Rules

18   of Civil Procedure, and the court's Local Rules.

19            As a result, on November 4, 2010, the undersigned entered findings and

20   recommendations that recommended the dismissal of plaintiff's case pursuant to Federal Rule of

21   Civil Procedure 41(b) for failure to prosecute her case and for failure to comply with the court's

22   orders, the Federal Rules of Civil Procedure, and the court's Local Rules.  (Findings &

23   Recommendations, Nov. 4, 2010, Dkt. No. 23.)  A detailed procedural history is included in

24   those findings and recommendations.

25            On November 15, 2010, plaintiff filed objections to the findings and

26   recommendations and contended that, contrary to the recitation of facts in the findings and

1   recommendations, plaintiff had filed documents with the court in response to the court's orders.

2   (Dkt. No. 24.)  She also contended that she attempted to appear at "the courthouse" on October 5,

3   2010, apparently believing that defendant's motion to dismiss would be heard on that date.  This

4   assertion was despite the fact that no hearing was ever noticed by defendant for October 5, 2010,

5   or otherwise set by the court for that date.

6           On November 22, 2010, defendant filed a response to plaintiff's objections.  (Dkt.

7   No. 25.)  Briefly stated, defendant requested that the court grant its motion to dismiss on the

8   merits.

9           On December 1, 2010, the undersigned entered an order vacating the previously

10  entered findings and recommendations.  (Order, Dec. 1, 2010, Dkt. No. 27.)  As stated in that

11  order, the undersigned remained skeptical of the truthfulness of plaintiff's representations stated

12  in her objections filed with the court.  Nevertheless, out of an abundance of caution and because

13  dismissal is generally a severe sanction, the undersigned vacated the findings and

14  recommendations, reset defendant's motion to dismiss for a new hearing date, and ordered that

15  plaintiff respond to the motion.  The undersigned warned plaintiff that this was plaintiff's final

16  opportunity to demonstrate that she is taking this lawsuit seriously and that the undersigned

17  would recommend the dismissal of this action with prejudice if plaintiff subsequently failed to

18  prosecute her action or comply with the court's orders, the Federal Rules of Civil Procedure, or

19  the court's Local Rules.

20          As noted above, although plaintiff filed a three-page written opposition to

21  defendant's motion to dismiss, she failed to appear at the hearing on defendant's motion to

22  dismiss on January 6, 2011.  Plaintiff's failure to appear at the hearing is yet another example of

23  her failure to prosecute her case and conform her conduct to the court's orders and Local Rules.

24  These failures persist despite the fact that the court has warned plaintiff on multiple occasions

25  that such deficient conduct would result in the dismissal of her case with prejudice.  The

26  undersigned would be justified in recommending the dismissal of plaintiff's case with prejudice

6

1   pursuant to Federal Rule of Civil Procedure 41(b).[8]  Defendant has diligently pursued the

2   dismissal of this case on the merits, and the court has spent dozens of hours trying to convince

3   plaintiff that she should pay attention to her lawsuit.  Nevertheless, out of an abundance of

4   caution, the undersigned will reach the merits of defendant's motion and dismiss plaintiff's

5   complaint without prejudice to the filing of an amended complaint.  However, if plaintiff fails to

6   file a timely amended complaint or otherwise fails to prosecute her case or comply with the

7   Federal Rules of Civil Procedure or the court's orders or Local Rules, the undersigned will

8   recommend that plaintiff's case be dismissed with prejudice pursuant to Rule 41(b).

9   III.   LEGAL STANDARDS

10          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

11  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

12  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

13  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

14  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

15  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

16

17          [8]  See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (recognizing that a court
    "may act sua sponte to dismiss a suit for failure to prosecute"); Hells Canyon Preservation
18  Council v. U.S. Forest Serv., 403 F.3d 683, 689 (9th Cir. 2005) (recognizing that courts may
    dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) sua sponte for a plaintiff's
19  failure to prosecute or comply with the rules of civil procedure or the court's orders);  Ghazali v.
    Moran, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) ("Failure to follow a district court's local
20  rules is a proper ground for dismissal."); Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992)
    ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for
21  failure to comply with any order of the court."); Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th
    Cir. 2002) (affirming district court's dismissal of case for failure to prosecute when habeas
22  petitioner failed to file a first amended petition); Thompson v. Housing Auth. of City of L.A.,
    782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (stating that district courts have inherent power to
23  control their dockets and may impose sanctions including dismissal); see also E. Dist. Local Rule
    110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court
24  may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule
    or within the inherent power of the Court."); E. Dist. Local Rule 183(a) ("Any individual
25  representing himself or herself without an attorney is bound by the Federal Rules of Civil or
    Criminal Procedure, these Rules, and all other applicable law.  All obligations placed on
26  'counsel' by these Rules apply to individuals appearing in propria persona.  Failure to comply
    therewith may be ground for dismissal . . . or any other sanction appropriate under these Rules.").

                                              7

1    motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

2    to state a claim to relief that is plausible on its face.'" Coto Settlement v. Eisenberg, 593 F.3d

3    1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

4    has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

5    reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

6    Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

7    1949).  The court accepts all of the facts alleged in the complaint as true and construes them in

8    the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).

9    The court is "not, however, required to accept as true conclusory allegations that are contradicted

10   by documents referred to in the complaint, and [the court does] not necessarily assume the truth

11   of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen,

12   559 F.3d at 1071 (citations and quotation marks omitted).

13          The court must construe a pro se pleading liberally to determine if it states a claim

14   and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

15   opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

16   Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Balistreri v. Pacifica

17   Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

18   construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss

19   pursuant to Rule 12(b), the court "may generally consider only allegations contained in the

20   pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

21   Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

22   quotation marks omitted).

23   IV.    REQUESTS FOR JUDICIAL NOTICE

24          Defendant requests that the court take judicial notice of the following documents:

25   (1) a recorded Deed of Trust dated April 26, 2006, securing a loan from a lender called Mortgage

26   Investors Group regarding the subject property (RFJN, Ex. A); (2) a document called "Payment

1    Advantage Fixed/Adjustable Rate Note in the amount of $676,500, dated May 10, 2007, which

2    does not appear to be recorded (RFJN, Ex. B); (3) a recorded Deed of Trust dated May 27, 2007,

3    securing the subject property (RFJN, Ex. C); (4) a recorded Notice of Default and Election to

4    Sell Under Deed of Trust dated October 8, 2009 (RFJN, Ex. D); (5) a recorded Notice of

5    Trustee's Sale dated April 13, 2010 (RFJN, Ex. E); and (6) a recorded Trustee's Deed Upon Sale

6    dated May 19, 2010 (RFJN, Ex. F).

7            The court may take judicial notice of matters of public record, but "may not take

8    judicial notice of a fact that is 'subject to reasonable dispute.'" Lee v. City of L.A., 250 F.3d

9    668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)).  Additionally, under the "incorporation by

10   reference" doctrine, a court may also review documents "whose contents are alleged in a

11   complaint and whose authenticity no party questions, but which are not physically attached to the

12   [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted

13   and modification in original).  The incorporation by reference doctrine also applies "to situations

14   in which the plaintiff's claim depends on the contents of a document, the defendant attaches the

15   document to its motion to dismiss, and the parties do not dispute the authenticity of the

16   document, even though the plaintiff does not explicitly allege the contents of that document in

17   the complaint." Id.

18           The court grants defendant's request for judicial notice as to all of the documents

19   as either public records or under the incorporation by reference doctrine.  Plaintiff has not

20   disputed the authenticity of any of the documents submitted by defendant.

21   V.     DISCUSSION

22           At the outset, the undersigned notes that plaintiff has not pled any specific claims

23   for relief.  Her complaint consists of a mix of allegations that has forced defendant and the court

24   to essentially make an educated guess regarding the claims that plaintiff intends to pursue.

25           A.     Alleged Violations of Congressional Enactments

26                  Defendant moves to dismiss plaintiff's claims premised on violations of the

9

Protecting Tenants at Foreclosure Act of 2009 and the Foreclosure Prevention Act of 2008.
Defendant argues that plaintiff has not shown that either of these acts of Congress provides a
private right of action or provides substantive relief to plaintiff.  (Def.'s Mot. to Dismiss at 3-5.)
Defendant's arguments are in large part well-taken.

> 1.    Protecting Tenants at Foreclosure Act of 2009

Defendant moves to dismiss plaintiff's claim premised on an alleged violation of
"the Protecting Tenants at Foreclosure Act of 2009[,] 12 U.S.C. 5201" (Compl. ¶ 1), on the
grounds that 12 U.S.C. §§ 5201 et seq., which defendant identifies as the codification of the
Emergency Economic Stabilization Act of 2008, does not confer a private right of action.  (Def.'s
Mot. to Dismiss at 4-5.)  Plaintiff's written opposition does not respond to defendant's argument.

Defendant correctly asserts that the provisions at 12 U.S.C. §§ 5201 et seq.
constitute the codification of the Emergency Economic Stabilization Act of 2008.  However, the
historical notes to 12 U.S.C. § 5201 also indicate that the Protecting Tenants at Foreclosure Act
of 2009 effectuated an amendment of the following statutory provisions: 12 U.S.C. § 5220,
which is within the Emergency Economic Stabilization Act of 2008, and 42 U.S.C. § 1437f.  See
also *Protecting Tenants at Foreclosure Act: Guidance on Notification Responsibilities Under the
Act With Respect to Occupied Conveyance*, 75 F.R. 66,385-02, 66,385 (Oct. 28, 2010) (noting
that the act was "codified at 12 U.S.C. § 5520 note").  It is entirely unclear whether plaintiff
intends to allege violations of these specific provisions.

In any event, defendant is correct that the consensus among district courts in this
Circuit located in California is that no express or implied private right of action against non-
governmental entities exists under the Emergency Economic Stabilization Act of 2008.  See, e.g.,
Manabat v. Sierra Pac. Mortgage Co., No. CV F 10-1018 LJO JLT, 2010 WL 2574161, at *11
(E.D. Cal. June 25, 2010) (unpublished); Gonzales v. First Franklin Loan Servs., No.
1:09-CV-00941 AWI-GSA, 2010 WL 144862, at *18 (E.D. Cal. Jan. 11, 2010) (unpublished);
Santos v. Countrywide Home Loans, No. 2:09-02642 WBS DAD, 2009 WL 3756337, at *2-3

1    (E.D. Cal. Nov. 6, 2009) (unpublished); <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 640 F. Supp.

2    2d 1177, 1185 (N.D. Cal. 2009).[9]

3            The weight of authority favors of a dismissal of plaintiff's claim with prejudice.

4    However, because of the lack of clarity in plaintiff's complaint insofar as the Protecting Tenants

5    at Foreclosure Act of 2009 is concerned, the undersigned dismisses this claim without prejudice

6    and provides plaintiff with leave to amend this claim to state a claim on which relief can be

7    granted.  However, the undersigned admonishes plaintiff that this claim should not appear in any

8    amended complaint unless plaintiff has an adequate legal and factual basis for an alleged

9    violation of the Protecting Tenants at Foreclosure Act of 2009.

10              2.    <u>Foreclosure Prevention Act of 2008</u>

11           Defendant also challenges plaintiff's purported claim premised on a violation of

12   the "Foreclosure Prevention Act of 2008[,] 12 U.S.C. 1701" (Compl. ¶ 2), on the grounds that

13   (1) 12 U.S.C. §§ 1701-1701z do not codify the Foreclosure Prevention Act of 2008, and (2) there

14   is no indication in those statutory sections that they confer a private right of action.  (Def.'s Mot.

15   to Dismiss at 5.)  Plaintiff's written opposition does not respond to defendant's arguments.

16           Although defendant is correct that Sections 1701-1701z do not codify the

17   Foreclosure Prevention Act of 2008, the historical notes to 12 U.S.C. § 1701 indicate that the

18   Foreclosure Prevention Act of 2008, Publ. L. 110-289, Div. B, Title I, § 2101, 122 Stat. 2830

19   (July 30, 2008), is codified within the National Housing Act.  At this time, the court cannot

20   discern what plaintiff intends to allege in terms of defendant's violation of the Foreclosure

21   Prevention Act of 2008.  Defendant surely did not violate 12 U.S.C. § 1701, which simply

22

23        [9]   Moreover, district courts have specifically concluded certain provisions contained in
     the Protecting Tenants at Foreclosure Act of 2009 relating to the notice to be provided to tenants
     leasing a foreclosed property do not create an express or implied federal private right of action.

24   <u>See</u> <u>Zalemba v. HSBC Bank, USA, Nat'l Ass'n</u>, No. 10-cv-1646 BEN (BLM), 2010 WL
     3894577, at *2-3 (S.D. Cal. Oct. 1, 2010) (unpublished); <u>Nativi v. Deutsche Bank Nat'l Trust</u>,

25   No. 09-06096 PVT, 2010 WL 2179885, at *2-4 (N.D. Cal. May 26, 2010) (unpublished).
     Although it is unclear if those provisions are at issue here based on plaintiff's complaint, plaintiff

26   does not appear to be the type of tenant that would be subject to the notice provisions.

1    provides: "This chapter may be cited as the 'National Housing Act.'" Although plaintiff is not

2    required to provide legal authority in a pleading, she must at least provide enough information to

3    state a plausible claim.  She has not done this.

4          Despite the fact that defendant requests dismissal with prejudice, the undersigned

5    cannot, due to the conclusory nature of the allegations in the complaint, determine whether the

6    Foreclosure Prevention Act of 2008 confers a private right of action, even if in part.  Thus,

7    although plaintiff's claim premised on the Foreclosure Prevention Act of 2008 is dismissed, such

8    dismissal is without prejudice.  Plaintiff is given leave to amend to clarify her claim that

9    defendant violated the Foreclosure Prevention Act of 2008.  However, as stated above, plaintiff

10   should not allege this claim in any amended complaint unless plaintiff has an adequate legal and

11   factual basis for an alleged violation of the Foreclosure Prevention Act of 2008.

12         B.     Loan Modification Under HAMP

13         Plaintiff also alleges that both Countrywide and Bank of America did not have or

14   enact a "making home affordable plan" as required and did not offer her a loan modification.

15   (Compl. ¶¶ 9, 12.)  Insofar as plaintiff's claims in this regard are that Countrywide and Bank of

16   America failed to meet their obligations under the HAMP program owed to the government,

17   plaintiff cannot pursue such claims.  District courts have persuasively concluded that there is no

18   private right of action to enforce obligations under HAMP that exist between a loan servicer and

19   the government.  See Wilson v. GMAC Mortgage LLC, 10CV2559 DMS (NLS), 2010 WL

20   5387829, at *1 (S.D. Cal. Dec. 22, 2010) (unpublished) ("HAMP generally involves an

21   agreement between a participating loan servicer and the U.S. Department of Treasury and a

22   borrower does not have a private right to enforce the HAMP contract. "); Ingalsbe v. Bank of

23   Am., N.A., No. , 2010 WL 5279839, at *5 (E.D. Cal. Dec. 13, 2010) (unpublished) (collecting

24   cases and stating that the "consensus among district courts in the Ninth Circuit is that there is no

25   private right of action under HAMP"); Hernandez v. HomeEq Servicing, No. 1:10cv01484

26   OWW DLB, 2010 WL 5059673, at *2-3 (E.D. Cal. Dec. 6, 2010) (unpublished) (concluding that

1  HAMP provides incentives to modify loans but does not require such modifications, and that

2  there is no private right of action to enforce HAMP); Marks v. Bank of Am., No.

3  03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5-7 (D. Ariz. June 22, 2010) (unpublished)

4  (discussing the history of HAMP and concluding that no express or implied private right of

5  action exists to enforce HAMP obligations).

6          Accordingly, the undersigned dismisses these claims.  The dismissal of the

7  HAMP-related claims is without prejudice, but the same admonition applies that this claim

8  should not appear in any amended complaint unless plaintiff has an adequate legal or factual

9  basis for alleged violations that she, as a private individual, can pursue.

10          C.    Predatory Lending

11          Plaintiff also alleges in conclusory fashion that Countrywide engaged in predatory

12  lending practices to procure a loan for plaintiff and her husband.  (Compl. ¶ 3.)  It is unclear what

13  facts alleged in the complaint relate to the predatory lending claim other than the allegations that

14  Countrywide "forced" plaintiff and her husband into a loan at a higher amount that they could not

15  afford and changed the loan contract from a fixed rate loan to a variable rate loan.  (Id. ¶¶ 3-6.)

16          Defendant moves to dismiss this claim on the ground that plaintiff's loan is not a

17  "covered loan" under California's predatory lending laws, California Financial Code § 4970.  As

18  defendant's counsel noted at the hearing, plaintiff's deficient and conclusory factual allegations

19  regarding predatory lending forced defendant to guess about the legal and factual basis for

20  plaintiff's predatory lending claim.  Defendant guessed that plaintiff's predatory lending claim is

21  one based on California Financial Code § 4973.

22          "California's predatory lending laws prohibit specific acts in connection with

23  "'covered loans.'"  Aguero v. Mortgageit, Inc., No. 1:09-CV-0640 OWW SMS, 2009 WL

24  2486311, at *2 (E.D. Cal. Aug. 12, 2009) (unpublished).  A covered loan is defined as:

25          (b) "Covered loan" means a consumer loan in which the original principal
           balance of the loan does not exceed the most current conforming loan limit
26          for a single-family first mortgage loan established by the Federal National

13

1    Mortgage Association in the case of a mortgage or deed of trust, and where
2    one of the following conditions are met:

3    (1) For a mortgage or deed of trust, the annual percentage rate at
     consummation of the transaction will exceed by more than eight
     percentage points the yield on Treasury securities having comparable
4    periods of maturity on the 15th day of the month immediately preceding
     the month in which the application for the extension of credit is received
5    by the creditor.

6    (2) The total points and fees payable by the consumer at or before closing
     for a mortgage or deed of trust will exceed 6 percent of the total loan
7    amount.

8    Cal. Fin. Code § 4970(b).

9          Defendant concludes without elaborate analysis that the loan at issue, which

10   defendant asserts in reliance on one of the judicially noticeable deeds of trust, was in the amount

11   of over $676,500 plus interest and is thus not a covered loan.  (RFJN, Ex. C)  Instead of a

12   thorough analysis, defendant simply cites De Los Santos v. World Capital Financial, No. CV

13   08-4839 CAS(AJWx), 2009 WL 649163 (C.D. Cal. Mar. 9, 2009) (unpublished), for the

14   proposition that the Federal National Mortgage Association's conforming loan limit is $250,000.

15   The court in De Los Santos provided no basis for its calculation.

16         The court independently visited the Federal National Mortgage Association's

17   website, which provides that a loan limit for an original single-unit loan originating in 2007, the

18   year the deed of trust that defendant asserts is the year of the loan at issue (RFJN, Ex. C), was

19   $417,000.  See Fannie Mae Historical Conventional Loan Limits, available at

20   http://www.fanniemae.com/aboutfm/loanlimits.jhtml (last visited Jan. 6, 2011).  As an initial

21   matter, the undersigned has concerns about relying on this website in the absence of a request for

22   judicial notice or without converting this motion to dismiss into a motion for summary judgment.

23   Nevertheless, for the purpose of guidance to the parties, assuming the court would consider the

24   information from the above-cited website, a loan in the amount of $676,500 would not qualify as

25   a covered loan.

26         Although defendant might be correct that plaintiff's loan is not a covered loan for

14

1   the purposes of California Financial Code § 4970, it is not at all clear that California's predatory

2   lending laws are the only laws under which plaintiff could allege predatory lending.  Indeed,

3   plaintiff does not rely on those laws, or any specific law, in her complaint or written opposition.

4   Moreover, it is unclear what precise factual allegations even pertain to plaintiff's predatory

5   lending claim.  Accordingly, the undersigned dismisses plaintiff's claim for failure to state a

6   claim on which relief can be granted, but such dismissal is without prejudice.

7           D.      Claims Relating to the Propriety of the Foreclosure

8                   Plaintiff also briefly alleges that Bank of America was not entitled to foreclose on

9   the property because it is not the original creditor.  (Compl. ¶ 8.)  To the extent that plaintiff even

10  intended this allegation to constitute a claim, the undersigned dismisses plaintiff's claim.

11                  Defendant moves to dismiss this claim on two grounds.  First, defendant contends

12  that ReconTrust Company, N.A., which the judicially noticeable documents reflect conducted the

13  foreclosure and trustee's sale, had authority to do so under California's non-judicial foreclosure

14  laws, Cal. Civ. Code §§ 2924-2924i.  (See RFJN, Ex. C at ¶¶ D, E, and at 4 (conveying the

15  power of sale to the trustee, ReconTrust Company, N.A.), and Ex. F.)  Plaintiff does not respond

16  to defendant's argument in her written opposition.  Defendant's argument is well-taken in that a

17  trustee, mortgagee, beneficiary, or any of their authorized agents may institute the non-judicial

18  foreclosure process.  See Cal. Civ. Code § 2924(a)(1); see also, e.g., Cantu v. CitiMortgage, Inc.,

19  No. CV F 10-2334 LJO GSA, 2010 WL 5394777, at *8 (E.D. Cal. Dec. 21, 2010) (unpublished)

20  ("Under California Civil Code section 2924(a)(1), a 'trustee, mortgagee or beneficiary or any of

21  their authorized agents' may conduct the foreclosure process.").  Accordingly, plaintiff's claim

22  that Bank of America could not permissibly foreclose on the property lacks merit.

23                  Second, defendant argues that plaintiff may not challenge the execution of the

24  foreclosure and trustee's sale without first alleging that she has tendered or could tender the full

25  amount of the indebtedness.  Plaintiff does not respond to defendant's argument in her opposition

26  brief, but her complaint alleges that she cannot pay the remaining balance of $353,495.65.  (Id.

                                                    15

¶ 11.)

"Under California law, in an action to set aside a trustee's sale, a plaintiff must demonstrate that he has made a valid and viable tender [offer] of payment of the indebtedness." Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1183-84 (N.D. Cal. 2009) (citations and quotation marks omitted); see also Alcaraz v. Wachovia Mortgage FSB, 592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009) ("'A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.'") (citing Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 92 Cal. Rptr. 851 (Ct. App. 1971)).  A tender must be one of full performance and must also be unconditional.  Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580, 205 Cal. Rptr. 15, 18 (Ct. App. 1984).

The California Court of Appeal has held that the tender rule applies in an action to set aside a trustee's sale for irregularities in the sale notice or procedure and has stated that "[t]he rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." FPCI RE-HAB 01 v. E & G Invs., Ltd., 207 Cal. App. 3d 1018, 1021, 255 Cal. Rptr. 157, 160 (Ct. App. 1989).  Furthermore, a party must allege full tender "in order to maintain any cause of action for irregularity in the sale procedure."  Abdallah v. United Savs. Bank, 43 Cal. App. 4th 1101, 1109, 51 Cal. Rptr. 2d 286, 292 (Ct. App. 1996); see also Arnolds Mgmt. Corp., 158 Cal. App. 3d at 579, 205 Cal. Rptr. at 18 ("A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender" (citation omitted)).  However, an offer of tender may not be required where it would be inequitable.  Pantoja, 640 F. Supp. 2d at 1184 (citing Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291, 119 P. 82 (1911) (holding that it would be inequitable to impose the tender requirement where a portion of the debt at issue did not belong to the party subject to the tender rule)); see also Vissuet v. Indymac Mortgage Servs., No. 09-CV-2321-IEG (CAB), 2010 WL 1031013, at *7 (S.D. Cal. Mar. 19, 2010) ("[B]ecause Plaintiff alleges improprieties with the origination and servicing of her loan, and

1  because the trustee sale has not taken place yet, the Court declines to require Plaintiff to make or

2  allege an actual tender at this time.").

3       Here, plaintiff's complaint alleges procedural impropriety with the foreclosure and

4  sale of the property, but does not allege a tender of payment.  It also appears from the complaint

5  that she cannot pay the indebtedness.  Accordingly, plaintiff's claim that Bank of America lacked

6  standing to foreclose on her home fails.  Although plaintiff's allegation regarding her inability to

7  repay the loan balance likely dooms her claim as to Bank of America, plaintiff will be given

8  leave to amend in an attempt to allege facts that would show that plaintiff has or could tender the

9  entire loan indebtedness.

10       E.       Newly Asserted Breach of Contract

11       Finally, in her opposition brief, plaintiff alleges new facts in support of a

12  purported breach of contract claim.  She alleges that defendant entered into a "verbal agreement"

13  with her to the effect that if plaintiff delivered certain financial documents to defendant, plaintiff

14  would be approved for a HAMP modification.  Specifically, plaintiff alleges: "[T]he defendant's

15  representative instructed plaintiff that if said documents were delivered to defendant, that

16  plaintiff would be approved for 'Making Home Affordable Program,' which plaintiff did deliver

17  in a timely fashion."  (Pl.'s Opp'n at 2.)

18       As an initial matter, defendant correctly objects to plaintiff's inclusion of new

19  allegations and an arguably new claim in her opposition brief.  The court reviews the sufficiency

20  of plaintiff's complaint based on the allegations contained therein, not new facts or claims

21  contained in a written opposition.  See ,e.g., Schneider v. Cal. Dep't of Corrections, 151 F.3d

22  1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the . . . opposition motion

23  . . . are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6)

24  dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a

25  memorandum in opposition to a defendant's motion to dismiss.")  Nevertheless, the undersigned

26  has considered the facts alleged in plaintiff's opposition in considering whether to grant plaintiff

1  leave to amend, especially because the new allegations arguably might relate to the allegations in

2  plaintiff's complaint that pertain to loan modification under the HAMP program.

3         Defendant substantively objects to the new breach of contract claim on the

4  grounds that: (1) plaintiff has not alleged that BAC Home Loan Servicing actually entered into a

5  loan modification agreement and that, therefore, (2) the alleged promise is an unenforceable

6  "agreement to agree."  (Def.'s Reply at 2-3.)

7         Although the undersigned agrees with defendant that it does not appear that any

8  actual loan modification agreement was executed by plaintiff and "defendant's representative,"

9  the facts provided by plaintiff are not detailed enough such that the undersigned can conclude

10 that no oral agreement was reached.[10]  Plaintiff alleges what appears to be a basic oral agreement:

11 if plaintiff submitted financial documents, her loan would be modified.  The court requires

12 additional facts about the nature of the alleged oral agreement before it can conclude as a matter

13 of law that plaintiff's claim, if alleged in an amended complaint, would fail to state a claim.

14        Moreover, the court cannot, at this point, conclude that the purported oral

15 agreement is an impermissible "agreement to agree."  See, e.g., Bonk v. Boyajian, 128 Cal. App.

16 2d 153, 155-56, 274 P.2d 948 (Ct. App. 1954) ("Where, in a business transaction, an important

17 item is reserved for future determination no enforceable obligation is thereby created for neither

18 law nor equity provides a remedy for breach of an agreement to agree in the future." (citation and

19 quotation marks omitted)).  On the one hand, an agreement to agree could be implied given that

20 any modification was conditioned upon receipt of documents.  However, although unlikely, the

21 promise at issue could be one to negotiate a loan modification, and a case that defendant cites

22 supports that an agreement to negotiate may be enforceable under certain circumstances.  See

23

24        [10]  Under California law, "[t]he standard elements of a claim for breach of contract are (1)
   the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,
25 and (4) damage to plaintiff therefrom."  See, e.g., Abdelhamid v. Fire Ins. Exch., 182 Cal. App.
   4th 990, 999, 106 Cal. Rptr. 3d 26, 32-33 (Ct. App. 2010) (citations and quotation marks
26 omitted).

1  Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251, 1257-58, 117 Cal. Rptr. 2d 875,

2  880-81 (Ct. App. 2002) ("A contract to negotiate the terms of an agreement is not, in form or

3  substance, an 'agreement to agree.'").  As a result, and based on the lack of clarity regarding

4  plaintiff's allegations pertaining to an alleged breach of an oral agreement, the undersigned will

5  permit plaintiff to amend her complaint to add a breach of contract claim

6        Notably, however, plaintiff might face one additional hurdle to her breach of

7  contract claim.  District courts have increasingly concluded that a plaintiff may not state a claim

8  for breach of an oral contract for the provision of a loan modification because such an oral

9  contract would violate the statute of frauds.  See, e.g., Clark v. Countrywide Home Loans, Inc., --

10  - F. Supp. 2d ---, No. 1:09-CV-01998-OWW-GSA, 2010 WL 3154119, at *3 (E.D. Cal. Aug. 9,

11  2010); Basham v. Pac. Funding Group, No. 2:10-cv-96 WBS GGH, 2010 WL 2902368, at *6

12  (E.D. Cal. July 22, 2010) (unpublished); Justo v. IndyMac Bancorp, No. SACV 09-1116 JVS

13  (AGRx), 2010 WL 623715, at *7 (C.D. Cal. Feb. 19, 2010) (unpublished).  Although the

14  undersigned expresses no view as to these authorities at this point, plaintiff should bear these

15  authorities in mind if she chooses to amend her complaint.

16  VI.   CONCLUSION

17        For the foregoing reasons, IT IS HEREBY ORDERED that:

18        1.     Defendant's request for judicial notice is granted.

19        2.     Defendant's motion to dismiss (Dkt. No. 15) is granted.

20        3.     Plaintiff's complaint is dismissed without prejudice, and plaintiff is

21  granted leave to file an amended complaint consistent with this order.

22        4.     Plaintiff shall have thirty (30) days from the date of entry of this order

23  within which to file and serve an amended complaint entitled "First Amended Complaint."

24  Plaintiff is informed that the court cannot refer to prior pleadings in order to make an amended

25  complaint complete.  An amended complaint must be complete in itself.  See E. Dist. Local Rule

26  220.  This is because, as a general rule, an amended complaint supersedes the original complaint.

See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Accordingly, once plaintiff files an amended complaint, the prior complaints no longer serve any function in the case.  Therefore, "a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."  London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981).[11]

       IT IS SO ORDERED.

DATED:  January 10, 2011

                       _____
                       KENDALL J. NEWMAN
                       UNITED STATES MAGISTRATE JUDGE

---

[11]  Plaintiff should also address in a separate writing the reasons why she failed to appear at the January 6, 2011 hearing, and why she should not be sanctioned for that failure to appear. The court remains curious about this additional failure in light of the fact that plaintiff filed a written opposition to defendant's motion to dismiss.